IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISAIAH HARRIS, by and** | : | **CIVIL ACTION** |
| **through his *Guardian ad litem*,** | : | |
| **STEVEN A. LITZ, ESQUIRE** | : | |
|     **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 04-CV-3890** |
| | : | |
| **LEHIGH COUNTY OFFICE OF** | : | |
| **CHILDREN & YOUTH SERVICES,** | : | |
| **et al.,** | : | |
|     **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                     **June  16 , 2005**

      Isaiah Harris, a four-year old child, was severely and permanently injured while a passenger in a car driven by his foster father. Through a newly-appointed *guardian ad litem*, Isaiah Harris brought this action against the Lehigh County Office of Children and Youth Services ("OCYS"),[1] the County of Lehigh, Topton House, LLC, transacting as Topton House, Topton Management Services, Inc., the Lutheran Home at Topton ("Lutheran"), his former *guardian ad litem* Jane Detra Davenport, Esquire, and his foster father Peter Norton. The Complaint alleges: 1) violations of his Fourteenth Amendment rights with remedies afforded under 42 U.S.C. §§ 1981, 1983, and 1988; 2) violations of Article I, Section 1 of the Pennsylvania Constitution; and 3) state law tort claims. The

---

[1]In its motion to dismiss, Lehigh County correctly points out that OCYS is not a legal entity separate and apart from Lehigh County, is not a political entity, and is simply a department of Lehigh County. OCYS shall be dismissed as a separate defendant, and any action alleged to have been taken by OCYS shall be imputed to Lehigh County.

parties have stipulated to dismiss Topton House and Topton Management Services from the case, and to dismiss Isaiah Harris's claims brought under 42 U.S.C. § 1981 and the Pennsylvania Constitution. The remaining four Defendants have each filed motions to dismiss. For the following reasons, I will deny the motions.

**I.      BACKGROUND**

The following facts from the Complaint are presented in the light most favorable to Isaiah Harris as the non-moving party. On November 20, 1998, Isaiah Harris was adjudicated a dependent child, and his legal and physical custody was relinquished to OCYS, a division of Lehigh County's Department of Human Services. OCYS enlisted the services of Lutheran for the purpose of placing Isaiah Harris in a foster home, and the court appointed Defendant Jane Detra Davenport, Esquire, *guardian ad item* on Isaiah Harris's behalf. He was placed with the Norton family.

The Complaint alleges that during the summer of 2002, Isaiah Harris "nearly drowned" while under the care of the Nortons.[2] OCYS, Lutheran, and Attorney Davenport conducted an investigation and decided to continue the placement of Isaiah Harris with the Norton household over the strong objections of his biological mother.

On December 28, 2002, Isaiah Harris was an unrestrained passenger in the backseat of a car driven by Mr. Norton. Mr. Norton crossed the center line of the

---

[2] At argument, it was apparent that the Defendants strongly contest the Plaintiff's characterization of this incident as a "near drowning." For purposes of a motion to dismiss, the court considers the facts as pleaded by Plaintiff as true.

roadway and struck another vehicle head-on. This accident resulted in Isaiah Harris's suffering severe and permanent injuries, including complete paraplegia.

## II. DISCUSSION

### A. The Legal Standard for Deciding a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a Defendant may move to dismiss a Complaint for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases where "a Complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the Plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-312 (3d Cir. 1999). Under Rule 12(b)(6), a Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue, therefore, is not whether the Plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); *see also* Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a Complaint should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the Complaint and accept all of the allegations as true, drawing all reasonable inferences in the Plaintiff's favor. ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); *see also* Lum

v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the Complaint, exhibits attached to the Complaint, matters of public record, and documents that form the basis of a claim).

**B.     The Section 1983 Claim**

In Count I of the Amended Complaint, Isaiah Harris charges OCYS, Lehigh County, Lutheran, and Attorney Jane Detra Davenport with violations of substantive due process under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

In order to maintain a Section 1983 claim, "a Plaintiff must show that the Defendants deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989). Analysis of a Section 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the Plaintiff has alleged a deprivation of a constitutional right at all." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

Isaiah Harris has a liberty interest in his personal security and well-being, an interest protected by the Fourteenth Amendment.[3] Youngberg v. Romeo, 457 U.S. 307, 315-319 (1982)(the substantive component of the Fourteenth Amendment's Due Process

---

[3]The Due Process Clause of the Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law.

4

Clause requires the State to provide involuntarily committed patients with such services as are necessary to ensure their "reasonable safety" from themselves and others).  He claims that his adjudication as a dependent by Lehigh County and his placement into the Norton household gave rise to the constitutional right of protection and reasonable physical safety, a right which was violated by the "utter lack of oversight" of that placement.

Generally, the government has no affirmative duty under the Constitution to take action to assure that each citizen is able to exercise, enjoy, or realize the benefits of a particular right.  DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989).  However, exceptions to the DeShaney rule exist when the State has placed sufficient restraints on a person's liberty to create a "special relationship" with the individual.  A substantive due process right arises out of the affirmative duties created by that special relationship.  A State's intervention under the foster care system sufficiently imposes upon a child's liberty interest to provide a substantive due process right.  Nicini v. Morra, 212 F.3d at 808.  When the State places a child in State-regulated foster care, the State has entered into a "special relationship" with that child which imposes upon it certain affirmative duties.  Id.  Failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under Section 1983.  Id.

In order to establish liability on the part of Lehigh County for the actions of OCYS, Isaiah Harris would have to show that it had an established policy or custom that

resulted in the alleged constitutional violations.  Brown v. Daniels, 2005 U.S. App. LEXIS 7132 (3d Cir. April 25, 2005)(citing Monell v. Department of Social Services, 436 U.S. 658, 690-691 (1978)).  Isaiah Harris contends that OCYS operated under policies or customs which "negatively impacted" the safety of foster children.[4]

A municipality may be liable for failing to train its employees if that failure amounts to deliberate indifference.  City of Canton v. Harris, 489 U.S. 378, 389-390 (1989) (failure to train may amount to a policy or custom that is actionable under § 1983 when in light of the duties assigned to specific employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need).  The deficiency of a municipality's training program must be closely related to the Plaintiff's ultimate injuries.  Id. at 391.  Isaiah Harris alleges that these policies, customs, and deficiencies including the poor training of OCYS's staff "negatively impacted" his safety and caused his injuries.

Lehigh County contends that the facts of this case accepted as true do not rise to the standard required, i.e., whether Lehigh County acted with such deliberate indifference as to shock one's conscience.  In Nicini, the Third Circuit held that:

> ". . . a plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct shocks the conscience in the

---

[4] Some of the policies or customs Isaiah Harris cites include:  poor training of personnel, chronic understaffing, dangerously deficient monitoring of children, dangerously deficient screening of foster parents, and a lack of thorough investigations.

6

particular setting in which that conduct occurred. In some circumstances, conduct that is deliberately indifferent will shock the conscience. Indeed, in the foster care context, most of the courts of appeals have applied the deliberate indifference standard, although they have defined that standard in slightly different ways."

Nicini v. Morra, 212 F.3d at 810. Lehigh County adds that "in the Nicini case, the Court concluded that the conduct did not rise to that standard and dismissed the Complaint." However, the Nicini case was brought on appeal of the District Court's grant of a summary judgment motion, not a motion to dismiss as here. Notice pleading only requires a Plaintiff to state a claim for which relief might be granted, not to prove his case entirely. I find that Isaiah Harris has successfully stated a claim for which relief might be granted under Section 1983, and is entitled to offer evidence to support his claims. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

  C. **The Claim Against the *Guardian Ad Litem***

Attorney Davenport argues that as *guardian ad litem* at the time of Isaiah Harris's injury, she is entitled to absolute immunity.[5] A *guardian ad litem* is appointed by the court to represent a minor child in particular litigation. The function of the guardian is to represent and protect unrepresented minors and their interests. *See* In re Kenna's Estate, 34 A.2d 617, 619 (1943); *see also* Estate of Pew, 655 A.2d 521, 536 (Pa. Super. 1994); Hughes v. Long, 242 F.3d 121, 127 (3d Cir. 2001).

---

[5]In addition to Count I of the Amended Complaint, Attorney Davenport is named in Count IV (Negligence) and Count VI (Intentional Infliction of Emotional Distress). She seeks immunity from all counts against her.

Section 1983 does not expressly provide for immunity. *See* Tower v. Glover, 467 U.S. 914, 920 (1984) (although Section 1983 on its face admits no immunities, the Supreme Court in recent decades has consistently recognized that doctrines of immunity may limit the relief available in Section 1983 litigation). The Supreme Court has provided absolute immunity for judges, *see* Pierson v. Ray, 386 U.S. 547 (1967); legislators, *see* Tenney v. Brandhove, 341 U.S. 367 (1951); prosecutors, *see* Imbler v. Pachtman, 424 U.S. 409 (1976); and witnesses, *see* Briscoe v. LaHue, 460 U.S. 325 (1983). However, the Supreme Court has yet to decide the issue of whether a *guardian ad litem* is absolutely immune, nor is there an established common-law tradition of absolute immunity for court-appointed guardians.

Even if an official did not enjoy absolute immunity at common law, she may still be entitled to immunity if she performs "special functions" that are similar or analogous to functions that would have been immune when Congress enacted Section 1983. Butz v. Economou, 438 U.S. 478, 506 (1978). This functional approach looks to the nature of the function performed, not the identity of the actor who performed it, and evaluates the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function. Forrester v. White, 484 U.S. 219, 224 (1988). The official seeking immunity bears the burden of showing that it is justified by the function in question. Id.

The Third Circuit Court of Appeals has adopted the functional approach in

determining immunity questions:

> We would agree that a guardian should be absolutely immune **when acting as an "integral part of the judicial process."** Briscoe, 406 U.S. at 335.  Furthermore, Supreme Court precedent in analogous cases and the reasoning of the soundly decided Circuit cases, discussed above, counsels the adoption of a functional approach to determining whether a guardian ad litem is absolutely immune. Under this approach, a guardian ad litem would be absolutely immune in exercising functions such as testifying in Court, prosecuting custody or neglect Petitions, and making reports and recommendations to the Court in which the guardian acts as an actual functionary or arm of the Court, not only in status or denomination, but in reality. This does not exhaust the list of functions which would be absolutely immune and each function would have to analyzed on a case-by-case basis.

Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989) (emphasis added).  In Pennsylvania,

the powers and duties of a *guardian ad litem* are statutorily defined.[6]  These include

---

[6]Title 42 Pa.C.S. § 6311 provides that the *guardian ad litem* is charged with representation of the legal interests and the best interests of the child at every state of the proceedings:

(1) Meet with the child as soon as possible following appointment pursuant to § 6337 (relating to right to counsel) and on a regular basis thereafter in a manner appropriate to the child's age and maturity.
(2) On a timely basis, be given access to relevant court and county agency records, reports of examination of the parents or other custodian of the child pursuant to this chapter and medical, psychological and school records.
(3) Participate in all proceedings, including hearings before masters, and administrative hearings and reviews to the degree necessary to adequately represent the child.
(4) Conduct such further investigation necessary to ascertain the facts.
(5) Interview potential witnesses, including the child's parents, caretakers and foster parents, examine and cross-examine witnesses, and present witnesses and evidence necessary to protect the best interests of the child.
(6) At the earliest possible date, be advised by the county agency having legal custody of the child of:
   (i) any plan to relocate the child or modify custody or visitation arrangements, including the reasons therefor, prior to the relocation or change in custody or visitation; and
   (ii) any proceeding, investigation or hearing under 23 Pa.C.S. Ch. 63 (relating to child protective services) or this chapter directly affecting the child.
(7) Make specific recommendations to the court relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety.

(continued...)

representation of the child in all court proceedings, investigating to discern the best interests of the child, making recommendations to the court, and advising the court of the child's wishes, where possible.

The exact functions performed by Attorney Davenport during this process are as yet unknown. Allegedly, she was part of an investigation of the "near drowning" and supported the decision to continue Isaiah Harris's placement with the Norton household. Without more, it is premature to determine whether her actions or inactions relating to Isaiah Harris could be considered an "integral part of the judicial process." *See* Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) (immunity is provided only for actions involving the initiation and prosecution of child custody or dependency proceedings); *see also* Gardner v. Parson, 874 F.2d at 146 (*guardian ad litem* would be immune in exercising such functions as making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court). After discovery is completed, an analysis of the functions performed by Attorney Davenport would enable a determination of whether those functions warrant immunity under the foregoing analysis.

---

[6](...continued)
(8) Explain the proceedings to the child to the extent appropriate given the child's age mental condition and emotion condition.
(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) shall not be considered a conflict of interest for the *guardian ad litem*.

### D.     The Claims Against Lutheran Home

Lutheran claims that it should be dismissed from the case because Isaiah Harris failed to show that Lutheran acted under color of State law.  Lutheran assisted Lehigh County in the placement of Isaiah Harris in the Norton household.[7]  Lutheran contends that this issue turns on whether or not Isaiah Harris was *voluntarily* or *involuntarily* placed with the county.  *See* Donlan v. Ridge, 58 F.Supp.2d 604 (E.D. Pa. 1999) (the State has an affirmative duty to protect children in foster care when it placed them there, but has no such obligation when the children are voluntarily put in foster care); *see also* Estate of Earp v. Doud, 1997 WL 255506 (E.D. Pa. 1997) (only the State can provide a safe haven to a child whom the State removed from his home; to the extent that a foster care agency undertook to carry out the State's obligation, it became a State actor).  Lutheran argues that because Isaiah Harris's Amended Complaint does not aver that he was involuntarily removed from his home by the State, he does not plead the facts necessary to state a claim under Section 1983 against Lutheran.

Lutheran's reliance on these cases is misplaced.  In Nicini, the Third Circuit Court of Appeals did not distinguish between the involuntary removal or voluntary removal of a child from his home.  In that case, a teenager fled his family home to escape a physically abusive father, and after a series of events, found refuge with a neighbor family.  The

---

[7]Lutheran is also named in Counts III and VI of the Amended Complaint which set forth causes of action for negligence and intentional infliction of emotional distress, respectively.  The motion seeks only the dismissal of Counts I and VI.

11

State temporarily approved that location as a placement, and asked the youth's father to sign a document permitting him to remain in the State's custody. While at the neighbor's home, the boy was sexually abused. He brought an action which included § 1983 and state law claims. The District Court disposed of the case at the pretrial stage. Upon appeal, the Third Circuit was persuaded by the numerous decisions of the other Courts of Appeals finding that foster children, like the incarcerated or the involuntarily committed, are placed in a custodial environment and are unable to seek alternative living arrangements, and held that the State has an affirmative duty to protect a child in foster care. Nicini v. Morra, 212 F.3d at 808. The court did not limit this holding to foster children who were forcibly removed from the family home.

     Generally, a contractor and its employees are not State actors simply because they are carrying out a State-sponsored program and the contractor is being compensated by the State. Nor does the fact that the activity being performed is a public function render the contractor and its employees State actors. Instead, the function performed must have been traditionally the exclusive prerogative of the State. Black v. Indiana Area School District, 985 F.2d 207 (3d Cir. 1993). Foster care agencies perform such a function, namely the removal of children from their homes. Donlan v. Ridge, 58 F.Supp.2d at 609. Thus, whether or not Isaiah Harris was forcibly taken from his home, Lutheran acted under color of State law when it assisted Lehigh County in the placement of Isaiah Harris.

### E. The Foster Father's Motion to Dismiss

Peter Norton moves for his dismissal from the case pursuant to Rule 12(b)(6) and 28 U.S.C. § 1367(a). He contends that since all federally-based claims against him have been eliminated in the Amended Complaint, there is no basis for the court to assert supplemental jurisdiction over the State law claims. I disagree.

Congress provided that "in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 42 U.S.C. § 1367. Here, Isaiah Harris's civil rights claims arose out of the same case and controversy as his claims against Mr. Norton. I will deny Mr. Norton's motion and assert supplemental jurisdiction over the State law claims against him.

## III. CONCLUSION

To withstand a 12(b)(6) motion, Isaiah Harris need only make out a claim upon which relief can be granted. *See* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (the notice pleading standard of Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief). If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (the simplified notice pleading

standard relies on liberal discovery rules to define disputed facts and issues and to dispose of unmeritorious claims). Upon the completion of discovery, a more comprehensive analysis of Isaiah Harris's Section 1983 claims and his State law claims will be possible. Accepting the allegations in the Amended Complaint as true and drawing all inferences in Isaiah Harris's favor, I find that Isaiah Harris has successfully stated claims for which relief might be granted. I will deny the motions to dismiss.

    An appropriate Order follows.